

# THE ATTORNEY GENERAL

## OF TEXAS

GERALD C. MANN

~~XXXXXXXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Railroad Commission of Texas
Austin, Texas

Gentlemen:        Opinion No. 0-3176

> Re:  Whether Railroad Commission
>      may issue special commodity
>      permit to one who holds cer-
>      tificate from I.C.C. author-
>      izing the transportation
>      interstate of the same com-
>      modities.

        We acknowledge receipt of your letter of February 17, 1941, wherein you advise that you have become consider-ably confused in your efforts to make literal application of our opinion No. 0-1633. Therein we expressed the view that "an interstate common carrier cannot at the same time hold an intrastate special commodity permit."

        The present difficulty arises from the fact to which you call our attention that the Interstate Commerce Commission does not issue "special commodity permits" under that name; but, it does insue authorizations limited to the transportation interstate of the same commodities as are mentioned in that part of our statute authorizing the is-suance of special commodity permits but calls them "common carrier certificates" or "limited common carrier certifi-cates." You have interpreted our opinion as holding that one may not hold a special commodity permit issued by the Railroad Commission and at the same time have a certificate from the I.C.C. authorizing the transportation interstate of the same commodities as those described in the special com-modity permit--since the I.C.C. considers and calls the au-thority issued by it a common carrier certificate.

        You provide us with the following specific illus-tration:

"For example, C. D. Newsom, an individual,
is the owner, holder and operator of intrastate
special commodity permit No. 12792 heretofore
issued to him by this Commission.  Very recently
he filed an application with this Commission
seeking an amendment of the heretofore mentioned
special commodity permit so as to remove certain
highway restrictions and generally increase the
authority given under his said permit.  The tran-
script of the evidence adduced at the hearing
held by the Commission on this particular appli-
cation established that the said C. D. Newsom
was the owner, holder and operator of a limited
common carrier certificate issued to him by the
Interstate Commerce Commission authorizing the
transportation of the same commodities in inter-
state commerce as are allowed by his intrastate
special commodity permit.  Applying your opinion
No. 0-1633, dated December 14, 1939, this Commis-
sion entered its order denying the application
of C. D. Newsom on the grounds that under your
said opinion the intrastate special commodity
permit of C. D. Newsom was void and it was im-
possible to amend a void permit."

You have attached to your letter a copy of the
Commission's order denying Mr. Newsom's application and it
appears to be based solely on such interpretation of that
opinion.

You request our opinion as to whether your decision
concerning the Newsom application was required by our said
opinion No. 0-1633.  You give us the following information
relative to departmental construction and practice:

"Over a long period of years it has been
the custom and practice of this Commission to
issue special commodity permits couched in gen-
eral language to the effect that the permittee
is authorized to carry for hire certain special
commodities named in the statute within  a cer-
tain given area or territory; and these special
commodity permits, so worded, have been construed

by this Commission over a long period of time to bestow both interstate and intrastate rights upon the permittee--that is to say, they have been construed to bestow the right to carry these special commodities intrastate within the stated territory or area; and, in addition, the right to use the highways of Texas as a limited common carrier in the transportation of the same commodities in interstate commerce within the same area.  And it has been the usual custom and practice of this Commission that, if a permittee holding such a permit, so worded, should later go to the Interstate Commerce Commission and procure a certificate of public convenience and necessity from that Commission authorizing him to carry for hire in interstate commerce the same commodities named in his special commodity permit issued by this Commission within the same area, then and in that event, under the policy and practice of this Commission in existence for a long period of time, it was not necessary for him to come back to this Commission for any additional authority to use Texas roads in interstate commerce over and above what he already had under his intrastate special commodity permit.

It is also shown in your letter that a great number of special commodity operators in Texas also hold such "common carrier certificates," limited to the same commodities, issued by the I. C. C.

As a matter of fact, in writing the opinion referred to we were not thinking of such a situation as this.  We had in mind, when speaking of a common carrier, one whose operations would constitute him a common carrier under the Texas statute--one who would be required to obtain a common carrier certificate from the Railroad Commission in order to legally conduct his operations in this State, and who presumably has complied with the law and obtained such certificate.      By way of review, that opinion was based upon Sections 6(d) and 6(bb), Vernon's Annotated Civil Statutes, reading as follows:

"Section 6(d).  The Railroad Commission is hereby given authority to issue upon application to those persons who desire to engage in the business of transporting for hire over the highways of this State, livestock, mohair, wool, milk, livestock feedstuffs, household goods, oil field equipment, and used office furniture and equipment, timber when in its natural state, farm machinery, and grain special permits upon such terms, conditions, and restrictions as the Railroad Commission may deem proper, and to make rules and regulations governing such operations keeping in mind the protection of the highways and the safety of the traveling public; provided, that if this Act or any section, subsection, sentence, clause, or phrase thereof, is held unconstitutional and invalid by reason of the inclusion of this Subsection the Legislature hereby declares that it would have passed this Act and any such Section, Subsection, sentence, clause or phrase thereof without this Subsection.  (As amended Acts 1937, 45th Leg., p. 651, ch. 321, para. 1.)"

"Section 6(bb).  No application for permit to operate as a contract carrier shall be granted by the Commission to any person operating as a common carrier and holding a certificate of convenience and necessity, nor shall any application for certificate of convenience and necessity be granted by the Commission to any person operating as a contract carrier nor shall any vehicle be operated by any motor carrier with both a permit and a certificate.  (Acts 1931, 42nd Leg., p. 480, ch. 277, para. 6.)"

We do not believe that Section 6(bb) was intended to forbid the same person's holding a special commodity permit issued by the Railroad Commission and a certificate issued by the Interstate Commerce Commission authorizing the carriage interstate of merely the same commodities regardless of the name by which the latter instrument is called. In Sec. 1(e), Art. 911b, it is provided that "The term 'certificate' means a certificate of public convenience

and necessity <u>issued under this Act</u>."  Sec. 3 prohibits any common carrier motor carrier operation in this State except under authority of a certificate issued by the Commission.  This applies even to purely interstate operations, although, of course, the issue of convenience and necessity is not in such cases.  Thompson vs. McDonald, 95 Fed. (2) 937; Winton vs. Thompson, 123 S.W. (2) 951, error refused. Hence, we think it evident that when the word "certificate" was used in Section 6(bb) it had reference to a certificate issued by the Railroad Commission.

The name by which the document issued by the I.C.C. is called is not so important.  It is our opinion that your action on the Newsom application was erroneous and our opinion No. 0-1633 is restricted in such way as not to be susceptible of the interpretation thus given it.

You also give us this other illustration of your actions in following that opinion:

"Another example:  In the application of M. A. Davis Transport, Inc., Docket No. 9647, applicant is the owner, holder and operator of contract carrier permit No. 11407 and he attempts, by said application, to amend his said contract carrier permit.  However, the evidence adduced at the hearing and our records reveal that he is the owner of an interstate common carrier certificate authorizing him to transport certain property for hire in interstate commerce. The Commission, in applying your opinion No. 0-1633 to this application denied the same for the reason that contract carrier permit No. 11407 is void and can not be amended because the Commission has construed your opinion to mean that a person may not own a contract carrier permit and, at the same time, own an interstate common carrier certificate.

"In connection with this latter example, the authority as a common carrier from the Interstate Commerce Commission is coextensive, so far as com-

modities are concerned, with a special commodity permit issued by this Commission--this concern having obtained from this Commission both a contract carrier permit and, in addition, a separate and different so-called 'double barrelled' special commodity permit."

And you inquire whether the Commission erred in so applying our opinion to M. A. Davis Transport, Inc. We are constrained to say that the Commission did err. The statute, Art. 911b, contains no inhibitions against a person's holding a contract carrier permit and a special commodity permit at the same time. As noted above, the I.C.C. certificate authorizing the carriage of the same articles interstate as are included in the special commodity permit and limited to those articles should not be considered a common carrier certificate so as to forfeit the operator's rights under his permits from the Railroad Commission.

You ask our opinion also in response to this question:

"When you held in your said opinion that one and the same person could not hold a special commodity permit issued by this Commission, on the one hand, and a certificate of public convenience and necessity issued by this Commission authorizing the holder thereof to use Texas highways in interstate commerce as a common carrier, on the other hand, did you intend thereby to hold that the holder of a special commodity permit issued by this Commission and couched in the general language aforesaid could not, at the same time, use and utilize such a permit as authority to use Texas roads in interstate commerce under a limited common carrier certificate issued by the Interstate Commerce Commission which said certificate is coextensive as to commodities with those named in said special commodity permit?"

From what we have already said our answer to the immediately above question is that we did not so intend.

You also ask this question:

"May the holder of a contract carrier permit issued by the Railroad Commission of Texas at the

same time hold a certificate as a common carrier
issued by the Interstate Commerce Commission?"

Our answer to this question as submitted is an af-
firmative one. However, if his I.C.C. certificate is a
common carrier certificate (as tested by the State statute)
and thus confers a broader authority than is embodied in the
contract carrier permit, he will be unable to legally operate
his I.C.C. certificate in Texas until he obtains a certificate
from the Railroad Commission in which event he will thus run
into the prohibition of Section 6(bb).

This question is also submitted:

"May one and the same person hold a special
commodity permit issued by this Commission, on
the one hand, and a certificate of public conven-
ience and necessity issued by the Interstate Com-
merce Commission, applicable to (a) this State or
(b) to another State, exclusive of this State,
on the other hand?"

The same person may hold a special commodity permit
issued by the Railroad Commission and a certificate of public
convenience and necessity issued by the I.C.C. and operate
both of them if the latter authority limits the commodities
to be hauled to the same ones as those described in the spec-
ial commodity permit. He can hold and operate common carrier
certificates issued by the I.C.C. authorizing general common
carrier operations in other states at the same time that he
holds a special commodity permit issued by the Railroad Com-
mission. However, he cannot lawfully operate an I.C.C. cer-
tificate authorizing general common carrier operations in
Texas without having a certificate from the Railroam Commis-
sion authorizing the use of the highways in such operations.
And, he cannot hold that certificate and the permit at the
same time.

You also submit the following question:

"Where a motor carrier owns a Special Com-
modity Permit issued prior to 1935, and subse-
quently, receives a certificate from the Inter-
state Commerce Commission authorizing such car-
rier to transport the same commodities in the

same territory in interstate commerce as his
Special Commodity Permit authorizes in intra-
state commerce, does the Railroad Commission
have authority to grant an application of such
motor carrier for amendment of such Special
Commodity Permit?"

From what we have already said, our affirmative
answer follows to this question.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By  /s/ Glenn R. Lewis
Glenn R. Lewis
Assistant

GRL:ej

APPROVED MAR. 5, 1941
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
BY /s/ BWB CHAIRMAN